**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


**PAMELA MONTGOMERY BECKHAM** *
                                      *
          **Plaintiff,**              *
                                      *
                                      *
          **v.**                      *          C.A. No. 08-172 (RMC)
                                      *
**NATIONAL RAILROAD PASSENGER** *
**CORPORATION  (AMTRAK)**             *
                                      *
          **Defendant.**              *
_____ *


<u>PLAINTIFF BECKHAM'S OPPOSITION TO
DEFENDANT AMTRAK'S MOTION TO DISMISS</u>


Plaintiff Pamela Montgomery Beckham, nearing her twentieth anniversary as an employee of Defendant Amtrak, (Complaint, ¶ 4) seeks this Court's assistance for a second time[1] to remedy violations of her federal civil rights, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq* (Title VII).    This individual action claims denial of promotion for which she was well qualified, due to her race and/or retaliation and denial of other benefits which would reasonably lead to career advancement (denial of training and tuition reimbursement and exclusion from management meetings).  These benefits of employment were readily provided to white co-workers and others who have not previously engaged in protected activities. Defendant Amtrak has moved to dismiss this action, claiming Ms. Beckham has not completed the required administrative process and also asserting her Complaint does not

---

[1]  Plaintiff was part of a class action brought by African American managers of Amtrak, <u>McLaurin v. Amtrak</u>, C.A. No. 98-2019 (ES).  She obtained monetary relief pursuant to a Consent Decree, which ended in 2004.  Beckham Declaration, Plt's Exh. No. 1, ¶¶ 2,3.

state a cause of action.  Plaintiff Pamela Beckham, by and through her counsel, hereby

submits her Opposition to Defendant Amtrak's Motion to Dismiss.

FACTUAL STATEMENT

Because Defendant has moved to dismiss the Complaint pursuant to Fed.R.Civ.P.

12(b), the allegations of Plaintiff Beckham are to be taken as true.  Here, however, both

parties seek to add additional facts for the Court's consideration without converting the

motion into one for summary judgment. [2]

A.    Facts Relating to the Court's Jurisdiction Pursuant to Rule 12(b)(1)

Ms. Beckham timely initiated the administrative procedures for Title VII relating

to her claim for denial of promotion.  Defendant's Exhibit 4 is the offer of employment to

the white selectee, Monica Sloane for her to begin as the Director of Service Standards

and Procedures on January 16. 2005. [3]  Within three hundred (300) days of that date, Ms.

Beckham filed a charge of discrimination and retaliation with the United Stated Equal

Employment Opportunity Commission (EEOC).  EEOC's Form 283, titled "Charge

Questionnaire", Plt's Exh. No. 2.  That form was filled out on November 10, 2005 by Ms.

Beckham and presented to the EEOC on that date.   It indicated that Amtrak was the

employer against whom she was filing a charge and it provided the EEOC with the

allegations of her complaint.  Id.

Ms. Beckham had gone to the EEOC to seek their assistance and complied with

the procedure the EEOC instructed her to follow.  Because the EEOC wanted to obtain

---

[2]    Defendant accurately argues that the submission of additional facts does not require
conversion of this motion into one for summary judgment.  Plaintiff also seeks to avoid
defending a motion for summary judgment prior to even the initial disclosures aspect of
this action.
[3]    Defendant's mistaken use of January 15, 2005, as the initial date of employment for
Ms. Sloane appears to be an error of no consequence.

more information upon which to act, it scheduled a follow-up appointment with Ms. Beckham when an EEOC intake specialist would be available. That date was December 21, 2005, as indicated by the appointment form it gave to Plaintiff Beckham. EEOC Appointment form, Plt's Exh. No 3. Ms. Beckham returned on that date and thereafter continued to work with EEOC to resolve her claims.

The EEOC form titled "Charge of Discrimination" which Defendant submitted as its exhibit number 1, reveals other employment actions for which Ms. Beckham alleges discrimination/retaliation occurred, including that Plaintiff was denied tuition reimbursement for courses she had taken to improve her work skills. Defendant also produced the tuition reimbursement request by Plaintiff (Defendant's Exhibit 6). However, it was not the request but Defendant's denial that started the charge-filing clock. Here, no date appears in the facts submitted by Defendant, except that the denial occurred before September, 2005. Defendant's Exh. No. 7. Ms. Beckham states that the denial of her request occurred in or around March, 2005, (Beckham Declaration, Plt's Exh. No 1, ¶ 11) a date not contradicted by Defendant and also clearly within 300 days before Plaintiff filed her charge of discrimination on November 10, 2005.

As stated in Defendant's Exh. No. 1 and in Plaintiff's Declaration, ¶¶  , the denial of other training provided to white co-workers and the denial of Plaintiff's request to work at home, an opportunity afforded to white co-workers, also occurred within the March, 2005 timeframe, well within 300 days of her filing of her discrimination charge with EEOC.

B.  Facts Demonstrating That Plaintiff Beckham Stated a Cause of Action

It was after this second meeting between Plaintiff and the EEOC Charge of Discrimination, Defendant's Exhibit 1, was produced.  It is dated January 26, 2006.  In it, Plaintiff alleges a number of other work place incidents.  The EEOC investigated, pursuant to its statutory obligation and the EEOC found reasonable cause to believe that Plaintiff Beckham was victimized by discrimination.  EEOC Determination, Plt's Exh No. 4., p. 1.  In addition to the denial of tuition reimbursement, the denial of training provided to white co-workers and the denial of the right to work at home, also provided to Ms. Beckham's Caucasian co-workers, were the claims made by Plaintiff to EEOC, and, upon investigation by the Commission, these claims were found to be discriminatory and retaliatory employment actions taken by Defendant Amtrak against Ms. Beckham. Id.

Ms. Beckham also points to the adverse action taken by Mr. Nogar in changing her job title and in removing job responsibilities which were then given to a white male, Russell Fox.  Beckham Declaration, Plt's Exh. No. 1, ¶ 6.

Defendant also claims that Mr. Nogar had no connection to the class action lawsuit, of which Plaintiff was a named class member.  Ms. Beckham refutes this assertion by informing the Court that Mr. Nogar was her immediate supervisor's supervisor at the time of the class action and that Nogar was involved in the class action. Beckham Declaration, Plt's Exh. No. 1, ¶¶ 2-3.  The McLaurin class action law suit against Defendant was based on claims similar to those in this action:  the failure of African Americans to progress in their careers, despite their excellent performance.  Here Ms. Beckham had excellent performance and a marked increase in her education with the

addition of both an undergraduate degree (2004) and a Masters degree in Business Technology Management (2007). Beckham Declaration

Defendant's Exhibit No. 7 is an admission that Mr. Nogar in fact was involved in the denial of tuition reimbursement to Ms. Beckham. Defendant Amtrak denied Nogar's involvement with this particular adverse action when it was being investigated by the EEOC. See, EEOC Determination, Plt's Exh. No. 4, p. 2. Yet, the admission it submitted proves otherwise.

In the current workplace environment in this country, when discriminatory or retaliatory actions against fellow employees are uncovered, almost inevitably the perpetrator feels the warranted wrath of the employer. It is obviously more prudent to exercise discriminatory/retaliatory actions in secret. Therefore, when unlawful motivations are present, they are harder to detect. **CITE**

ARGUMENT

A. Standard Of Review

Defendant correctly states this Court, when considering subject matter jurisdiction under Fed.R.Civ.P.12(b)(1) may consider materials outside the pleadings. Jerome Stevens Pharmacy, Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). For the jurisdictional prerequisites, plaintiff must establish the factual predicates by a preponderance of the evidence. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). However, in this type of challenge by defendants, plaintiffs must "be given an opportunity for discovery of facts necessary to establish jurisdiction." Ignatiev v. United States, 238 F.3d 464, 467 (D.C. Cir. 2001).

However, as with challenges by defendants under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged" in considering motions to dismiss under Rule 12(b)(1). Trudeau v.FTC, 456 F.3d 178, 193 (D.C. Cir. 2006). For purposes of this

B. Plaintiff Has Exhausted Her Administrative Remedies In A Timely Fashion

Defendant Amtrak seeks dismissal based on the alleged failure of Plaintiff Beckham to comply with the administrative procedures contained in Section 706 of Title VII, 42 U.S.C. §2000e-5.. Defendant argues that by not filing a charge with the United States Equal Employment Opportunity Commission (EEOC) within 300 days of the discriminatory and retaliatory actions taken against her by Amtrak, this Court is deprived of the statutory jurisdiction of Title VII and dismissal is required pursuant to Fed.R.Civ.P. 12(b)(1).

Although Defendant has correctly stated the law as to the filing requirements, it misstates the facts pertaining to Ms. Beckham. Plaintiff Beckham did file a charge alleging discrimination within 300 days of Defendant's selection of a lesser qualified person to fill the Director of Special Services and Operations position. Therefore, jurisdiction over her claims is bestowed on this Court.

Defendant Amtrak submitted documents to confirm the relevant date upon which the adverse action began. Its Exhibit 4 is used to verify the date of the personnel action challenged by Ms. Beckham, showing that the selectee for the Director position began

her employment on January 16, 2005. [4]  Thus there is no dispute between the parties as to the date of the alleged discriminatory/retaliation action.  Defendant's Exhibit No. 4 correctly states the date to be used as the adverse action, denial of promotion, as January 16, 2005.  Defendant's Motion to dismiss, p. 6.  That date started the clock.

Again as stated by Defendant, Ms. Beckham had 300 days to initiate her charge of discrimination with the EEOC.  Id., p.  .

On November 10, 2005, Ms. Beckham notified EEOC of her allegations against Defendant Amtrak, by filling out and signing the Commission's Form 283.  Plt's Exh. No. 2.

The Supreme Court, in FEDERAL EXPRESS CORP. v. HOLOWECKI, 552 U.S. ___, 06-1322 (U.S. 2-27-2008) addressed the issue of timing when a complainant filled out EEOC's Form 283, which, as here, contained the identification of the alleged discriminating employer and the allegations of discrimination.  The Court found for the complainant.   "We conclude as follows: In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action."

Here the identification of Defendant and the allegations against it are contained in Ms. Beckham's EEOC Form 283.  Additionally, the agency was informed that Ms. Beckham was seeking more than information, but also sought assistance in resolving her claims against Defendant Amtrak.  This is not only clear from the fact that she made an

---

[4]    Amtrak actually misstates the date as January 15, 2005, but the document itself states otherwise – January 16, 2005.  However, its error of one day makes no difference to the legal analysis relevant here.

appointment to provide further information upon which EEOC could itself take action, Plt's Exh. No. 3, but also that such action was taken. A full investigation by the EEOC followed Ms. Beckham's provision of information regarding her claims and the EEOC made a finding based on its own investigation, that there was probable cause to believe that Defendant Amtrak had violated the civil rights of Ms. Beckham which are protected by Title VII. EEOC Determination, Plt's Exh No. 4.

The filing of the charge of discrimination/retaliation for the denial of promotion claim, therefore, occurred within 300 days of Plaintiff's awareness of the denial itself.

The other claims made by Plaintiff Beckham also occurred within 300 days of the adverse action taken against her by Defendant Amtrak. The training she was denied occurred in March, 2005. Beckham Declaration, Plt's Exh. No. 1, ¶ .

The Defendant's denial of her tuition reimbursement also occurred in or around March, 2005 and her filing of a charge alleging the discrimination occurred within 300 days of the denial.

Plaintiff was denied the ability to work at home that was provided to Caucasian co-workers in or around March, 2005, and her providing allegations of this offense by Amtrak occurred within 300 days.

Thus, all of the allegations for which she seeks relief contained within the Amended Complaint occurred less than 300 days before she approved EEOC and for all of those allegations, Plaintiff properly complied with the statutory administrative procedures.

C. Plaintiff Has Stated A Cause Of Action In Her Complaint.

Defendant Amtrak asserts that the claims of discrimination/retaliation contained in paragraph 15 of Plaintiff's Complaint are not explicit enough to state a cause of action. Although Plaintiff disagrees for several reasons, including Defendant's awareness of the claims which have been repeatedly assert to Defendant and which it defended in several filing with the EEOC, Plaintiff seeks to simplify the process here by amending her Complaint. She has redrafted paragraph 15 to assert the claims that she raised to EEOC, which were investigated by that agency and which the Commission found were the bases for belief that Amtrak had discriminated/retaliated against Plaintiff Beckham.

Paragraph 15 of the Amended Complaint states:

"15.    Defendant has denied Plaintiff Beckham other benefits and favorable conditions of employment, including training and preferential work conditions, which were not denied to Caucasian co-workers and/or other co-workers who have not engaged in protected activities against Defendant Amtrak. These denied benefits are:

a.    The denial of training classes that were provided to Caucasian co-workers in or around March, 2005;

b.    The change of her work duties and responsibilities and the change in her job title, which duties were preferentially given to a Caucasian co-worker;

c.    The denial of the ability to work at home, which opportunity was given to Caucasian co-workers."

Each of these three allegations provides a basis for separate relief from Amtrak, if the reasons for the denial of each is either unlawful discrimination or unlawful retaliation. Because the motion by Defendant is pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the Amended Complaint are to be construed as true. Each allegation asserts enough harm to violate Title VII.

Of further importance is that each allegation has been previously presented to Amtrak by the EEOC, so that Defendant has been able to see the harm that has been caused to Plaintiff Beckham. To assert ignorance of her claims, as it does here, but then to assert that the administrative processes are a required prerequisite to participation in

the federal court process is inconsistent.  Plaintiff Beckham was required to process her claims through the EEOC so that resolution could be pursued.  As previously discussed *supra,* Plaintiff followed those procedures.  How inconsistent for the process it would be if Defendant could pretend that it is totally ignorant of all the preceding interactions between the parties.  Defendant seeks to come to this Court claiming obligations by Plaintiff prior to appearing here, which are not denied.  But then Defendant seeks to act for the Court as if this is an issue of first impression for it.

Amtrak claims that Ms. Beckham must make the allegations of her claims to the EEOC in a timely fashion, but that it could pretend to have never participated in the prior administrative process.  The legal fallacy of asking the Court to hold Plaintiff accountable for clearly stating what claims she has against Amtrak but then claim to have no accountability itself for hearing Ms. Beckham is specious, at best.

Plaintiff, however, has sought to avoid placing Defendant Amtrak in the conundrum of pleading ignorance of her claims in this Court while fully participating in refuting her claims in the required administrative process by amending her Complaint.

D.    The Timing In The Repeated Denials Of Benefits To Ms. Beckham Provides The Causal Connection Necessary To Plead Retaliation.

Plaintiff Beckham has pointed to Mr. David Nogar as the official of Defendant Amtrak who had responsibility for many, if not all, of the adverse actions of which she complains here.   There is no question that he was the selecting official for the promotion Ms. Beckham claims she was denied. Amended Complaint, ¶¶ 12, 14,  There is also no doubt that he was involved in the denial of her tuition reimbursement. Amended Complaint, ¶¶ 8-11; Defendant's Exh. No. 7.

Defendant makes two arguments: David Nogar had no connection to the McLaurin class action against Amtrak and even if he did, there was a consent decree in the class action entered into in 1999. Both arguments must fail.

The Amended Complaint repeats the allegation of the Complaint that Mr. Nogar was involved in the McLaurin class action. Amended Complaint, ¶ 7. In assessing whether a complaint states a cause of action, all of the allegations are taken to be true. Factual challenges are not permitted under Rule 12(b)(6) and the Court may only consider the facts alleged in the complaint in weighing the merits of the motion. EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

Further, the connection of David Nogar to the class action has been denied by Amtrak to the EEOC, but the Commission's investigation and Determination rejected that Defendant's denial, finding he was part of the management team that the class action challenged. Plt's Exh. No. 4, p. 1. Further, Ms. Beckham states in her Declaration that Mr. Nogar was the supervisor of her supervisor who was identified in the class action. Therefore, not only is the factual allegation made in the Amended Complaint, but there are facts in support of that assertion.

The second argument by Amtrak must fail as well. It proposes that the entering of the Consent Decree in 1999 put an end to the connection of its managers to the class members. But the district court's docket sheet tells a different story. As late as November 24, 2004, Judge Sullivan was ruling on contested facts in the Consent Decree. He needed to determine the exact amount of pay adjustment class members were entitled to receive, by reviewing Defendant's records and analyzing both party's expert witness

reports.  The key to the class action, how much salary adjustment class members would receive, was still at issue until his ruling.

The class action continued until the end of November, 2004.  Less than two months later, Ms. Sloane started in the position that Ms. Beckham believed she was the best qualified to receive.

Therefore, the three elements of Plaintiff's retaliation claim are met: 1) Ms. Beckham engaged in protected activity, 2) Ms. Beckham suffered adverse employment actions from Defendant and 3) there is a causal connection (short time frame) between the two.

Respectfully Submitted

_____/s/_____
Gary T. Brown
D.C. Bar No. 246314
Gary T. Brown & Associates
Suite 1000
1111 14th Street, N.W.
Washington, D.C.  20005
(202) 393-4900
Attorney for Plaintiff,
 Ms. Pamela Beckham

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PAMELA MONTGOMERY BECKHAM *
                              *
      Plaintiff,           *
                              *
                              *
v.                            *      C.A. No. 08-172 (RMC)
                              *
NATIONAL RAILROAD PASSENGER    *
CORPORATION  (AMTRAK)          *
                              *
      Defendant.            *
                              *

## DECLARATION OF PLAINTIFF PAMELA BECKHAM

I, Pamela Montgomery Beckham, do declare and affirm the following:

1. I am the Plaintiff in the above-referenced civil action brought against my employer, National Railroad Passenger Corporation (Amtrak).

2. I have previously been involved in federal litigation against Amtrak in the class action identified as McLaurin v. Amtrak, C.A. No. 98-2019. That action was resolved by a Consent Decree, approved in November, 1999. I received relief from the Decree for pay disparities against African American managers of Amtrak.

3. The Consent Decree continued until 2004. The Decree named Thom Chawluk as a manager who discriminated against the protected class members. See, Exh. No. 2, p. 1. David Nogar was Thom Chawluk immediate supervisor at that time.

4. The Decree provided varied relief for African American manager class members. I received a lump sum payment to compensate for a salary disparity and racial discrimination.

5. A final Order in this class action was signed by Judge Sullivan on November 26, 2004.

6. My job title is not "*Senior Analyst, Service Standards & Operation*" but rather "*Program Manager, Service Standards & Operation*". Changing the title diminished the position. Mr. David Nogar changed the title after hiring Monika Sloane. Mr. Nogar not only changed the title but took responsibilities away from me and gave them to Russell Fox, a white male.

7. Mr. Nogar did assign me to manage one of the largest technology programs in Amtrak's department of transportation, the Transportation Department Review System (TDRS). This is inconsistent with telling Ms Hancock to deny tuition reimbursement to me for the Master's Degree in Advance Business Information Technology. I would not have been able to successfully manage the new program I was assigned (TDRS) without the courses I took for which I was denied tuition reimbursement. I continue to manager (TDRS) and work closely with Amtrak's IT department.

8. On January 16, 2005, Ms. Monica Sloane started with Amtrak in her position as Director of Service Standards & Operations. I had applied for the position, and was well qualified, since I had been performing the duties of the job for the last three years. I was rejected in favor of Ms. Sloane, a less qualified white female. Mr. Nogar was the selecting official.

9. In March, 2005, I was denied training by Mr. Nogar, while Ms. Monika Sloane and my counter-part Mr. Russell Fox were provided training for which Amtrak paid

10. During this same time frame, my request to work at home was denied, although similarly situated white employees were allowed to work from home.

2

11. In 2005, I was also denied reimbursement for money I had spent on tuition for courses that would help me better perform my work at Amtrak. I was informed that David Nogar used his Amtrak position to insure that I would be denied tuition reimbursement.

12. On November 10, 2005, I went to the EEOC office in Philadelphia (I had previously file a claim with Amtrak's Dispute Resolution Office [DRO]) to file a charge against Amtrak for the non-promotion and other adverse actions that were occurring to me at work.

13. While I was there, I completed the EEOC's "Charge Questionnaire". It has been filed with this Declaration as an exhibit.

14. I inquired of EEOC personnel as to what I needed to do to have them assist me in pursuing my claims of race discrimination and retaliation against Amtrak. In addition to having me fill out the Charge Questionnaire, the EEOC arranged for me to return to them when there would have an intake person available to take more information from me and to further inform me as to how they would proceed. Additionally, I was informed that I had met the require time frame. I was then provided a form as to when the next appointment would be. Exh. No. 4 EEOC Appointment.

15. Not only did I go back on the appointment date, but I continued to work with EEOC while my claim was processed. After interviewing the witnesses and reviewing the documents, EEOC found that there is reasonable cause to believe that I am the victim of racial discrimination and retaliation. Exh. No. 2, EEOC Determination.

16. When Amtrak refused to negotiate through EEOC to resolve my claims, I filed this lawsuit.

3

I declare under penalty of perjury that the foregoing is true and correct.

Pamela Beckham

Executed on _____ 6/07/08 _____.

## CHARGE QUESTIONNAIRE

| | EEOC Use Only | Name (Intake Office |
|---|---|---|

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on back before completing this form.

**EEOC Use Only:** 170 - 2006 - 00374 N

Please answer the following questions, telling us briefly why you believe you have been discriminated against in employment. An officer of the EEOC will talk with you after you complete this form.

Date of Birth: 11·16·1957    Social Security Number: 058 - 54 - 7213

NAME: Mr. (Ms) Pamela Jane Montgomery    DATE: 11·10·2005
(First) (Middle Name or Initial) (Last) (Please Print)

ADDRESS: 2822 Claybrooke Drive    TELEPHONE NO. (include area code) 410-265-8305

CITY: Windsor Mill    STATE: MD    ZIP: 21244    COUNTY: Baltimore

Please provide the name of an individual at a different address in your local area who would know how to reach you.

NAME: Alice L Winston    RELATIONSHIP: Sister    PHONE: 410 - 788·8445

ADDRESS: 1507 Raveling Well Ln.    CITY: Catonsville    STATE: MD    ZIP:

I believe I was discriminated against by: (Check those that apply)

- [X] EMPLOYER
- [ ] UNION (Give Local No.)
- [ ] EMPLOYMENT AGENCY
- [ ] OTHER (Specify)

APPROX NO. EMPLOYED BY THIS EMPLOYER

| | | |
|---|---|---|
| NAME | Amtrak | NAME |
| ADDRESS | 15 South Poplar St. first floor | ADDRESS |
| CITY, STATE, ZIP | Wilmington DE 19801 | CITY, STATE, ZIP |
| MAIN TELEPHONE NUMBER | 302-683-2127 | MAIN TELEPHONE NUMBER |

If you checked "Employer" above, are you now employed by the Employer that you believed discriminated against you?

YES: From Sept. 1989    NO: I applied for _____ (position)    OR: I was employed as _____ (position)

SR. Analyst (current position)    on _____ (Date)    until _____ (date)    I was _____ (laid off, fired, etc.)

What action was taken against you that you believe to be discriminatory? What harm, if any, was caused to you or others in your work situation as a result of that action? (if more space is required, use reverse.)

① Hired white female that I am presently training in the Service Standards Department. White female (Monika Sloane) allowing my white counterpart to work from home. David Mozzer (Monika Sloane boss) allows both Monika and my white Counter Part (Russ Fox) to attend meetings that I am excluded from. Last year I asked David to sign off on tuition reimbursement I was told no, because I didn't need Master Degree. Both Monika and Russ (see additional comment on attached paper)

WHAT WAS THE MOST RECENT DATE THE HARM YOU ALLEGED TOOK PLACE? 10/13/05 - 11/7/05

EEOC Form 283 (10/94)

Do you believe this action was taken against you because of: (check the one(s) that apply and specify your race (if you checked race), your religion (if you checked religion), your national origin (if you checked national origin) or your disability (if you checked disability))

[✓] Race        [ ] Sex        [ ] Religion        [ ] National Origin        [ ] Age

[ ] Disability        [ ] Other (explain) _____

If you checked any block(s) above, explain why. If you did not check any block above, explain the reason(s) why you believe the action was taken against you.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Have you sought assistance about the action you think was discriminatory from any agency, from your union, an attorney, or from any other source?        [ ] No        [✓] Yes        (If answer is yes, complete below.)

NAME OF SOURCE ASSISTANCE    *Antrakis  DRO*        DATE  *10/21/05*

RESULTS IF ANY:    *They said that they would turn it over to their internal EEO department*

Have you filed a complaint about the action you think was discriminatory with any other Federal, State, or Local Government Anti-discrimination agency?        [✓] No        [ ] Yes        (If answer is yes, complete below.)

NAME OF SOURCE ASSISTANCE _____        DATE _____

RESULTS IF ANY: _____

Have you filed an EEOC Charge in the past?        [ ] No        [ ] Yes        (if answer is yes, complete below)

APPROX. DATE FILED _____    ORGANIZATION CHARGED _____    CHARGE NUMBER (IF KNOWN) _____

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE  *A. Pamela Montgomery*        DATE  *11.10.2005.*

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1. FORM NUMBER/TITLE/DATE. EEOC Form 283, Charge Questionnaire (12/93).

2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)

3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction. When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s).

4. ROUTINE USES. Information provided on this form will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over allegations of employment discrimination and to provide such charge filing counselling as is appropriate. Information provided on this form may be disclosed to other State, local and federal agencies as may be appropriate or necessary to carrying out the Commission's functions. Information may also be disclosed to charging parties in consideration of or in connection with litigation.

5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

Reverse Side of Form 283 (12/93)

Pamela Montgomery    SS# 058·54·7213.

① are allowed to come in early and leave early, or to come in late, I am not granted this opron. I was also told recently that I ~~need~~ to be micro-managed and my white counterpart didn't.

also I had filed a complaint against David Logan before (Sprenger & Lang) for different ~~trata~~ treatment. I believe alot of his action likely has been because of the original complaint/action.

When Monika was given the job of Director of Service Standard I was told before she came that they needed someone up and running. Well all the program that she works with have been self taught. While I am attently ~~go to~~ School (Villa Julie College) to get my Master and have learned these same program. Where I feel I have the leg on Monika is that I know standards and have been writing them (with the assistance of the various departments) for nearly five years.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604, 2632 & 2805

## EEOC APPOINTMENT

NAME _Pamela Montgomery_

INQUIRY NUMBER _170 - 2006-03741_

Your scheduled appointment time to have an intake interview with an Investigator concerning the possible filing of a charge of employment discrimination is as follows:

DAY: _Wednesday_  DATE: _12/21/05_  TIME: _11:00 am_

YOUR INTERVIEWER: _B. W. Jason_

In order to facilitate the charge taking procedure, you should bring with you relevant notes, documents or letters as well as names, addresses and telephone numbers of any witnesses or other materials that you believe may support your charge. Also, if you have been given a questionnaire by EEOC, please complete and bring this with you.

**Please note that the intake appointment is normally scheduled for two hours.** This length of time is needed to insure that all intake processing and counseling can be completed without the need for you to return again to the office. Therefore, please schedule your other appointments accordingly to permit you to keep this EEOC appointment. In addition, please insure that you make travel and parking arrangements suitable to enable you to remain in the office during the allotted interview time.

---

PLEASE REPORT ON TIME AS INDICATED ABOVE. <u>PLEASE NOTE THAT IF YOU ARRIVE MORE THAN 15 MINUTES AFTER THE SCHEDULED APPOINTMENT TIME, WE WILL MOST LIKELY BE UNABLE TO KEEP YOUR APPOINTMENT TIME AVAILABLE FOR YOU AND YOUR APPOINTMENT WILL NEED TO BE RESCHEDULED.</u> IF YOU CANNOT KEEP YOUR APPOINTMENT, PLEASE CALL AS SOON AS POSSIBLE TO CANCEL THAT APPOINTMENT AND ARRANGE FOR RESCHEDULING. <u>YOU SHOULD NOTE</u> THAT A RESCHEDULED APPOINTMENT DATE WILL PROBABLY BE 4-6 WEEKS AFTER YOUR ORIGINAL APPOINTMENT. THUS, IT IS TO YOUR ADVANTAGE TO KEEP THE ORIGINAL APPOINTMENT. CALLS FOR CANCELLATION AND SUBSEQUENT RESCHEDULING SHOULD BE MADE TO THE CHARGE RECEIPT/TECHNICAL INFORMATION UNIT AT (215) 440-2607. PLEASE STATE YOUR NAME, SPELL THE LAST NAME, GIVE THE DATE AND TIME OF THE PREVIOUS APPOINTMENT AND LEAVE A PHONE ~~NUMB~~ NUMBER WHERE YOU MAY BE REACHED DURING THE DAY. YOUR CALL WILL BE RETURNED AS SOON AS POSSIBLE.

---

Your signature below indicates your receipt of this document:

Signature: _M. Pamela Montgomery_     Date: _11/10/05_

(1-14-05)

*Present this form to the Receptionist when you arrive at our office.*     *Rev. 3/7/05*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2632, 2604 & 2685

Pamela Montgomery
2822 Claybrooke Drive
Windsor Mill, MD 21244

Charge # 170-2006-00374

Charging Party,

Amtrak
15 South Poplar Street
Wilmington, DE 19801

Respondent,

## DETERMINATION

Under the authority vested in me by the Procedural Regulations of the Equal Employment Opportunity Commission (EEOC), I issue on behalf of the EEOC the following determination as to the merits of the subject charge, filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII). The timeliness and all other jurisdictional requirements for coverage have been met.

Charging Party, a Black female, is employed with Respondent as a Senior Analyst. Her date of hire was September 26, 1989. Charging Party rose through the ranks of Respondent. Her employment began as a Train Attendant and she became a Conductor in 1992. She then served as a Service Manager between 1995 through 2000, Project Manager between 2000 through 2002 and currently serves as Program Manager for Service Standards and Operations. Charging Party was a class member identified in an action against Respondent where a consent decree was issued effective in 1999. The consent decree, which named David Nogar as the manager who discriminated against a protected class, expired in 2004.

The Charging Party alleged she was retaliated against by being denied the opportunity to compete for the vacancy Director of Service Standards and Operations. Charging Party alleged that the hiring manager, Mr. Nogar, wrote the job posting and position description in a way that precluded her from qualifying. In addition, Charging Party claims that the successful candidate was not qualified in that she lacked experience in the knowledge of service standards, knowledge of web design, knowledge of train operations and she possessed only limited knowledge of graphic design programs.

Charging Party also alleged that she was subjected to unlawful retaliatory discrimination by David Nogar, her former supervisor, and Monika Sloane, Director of Service Standards and current supervisor, because of her race and in retaliation for participating in an activity protected under Title VII. Specifically, Charging Party alleged that she was denied tuition reimbursement, denied training in March 2005, which was afforded to similarly situated employees, and was denied the opportunity to work at home while similarly situated employees were allowed to do so.

Respondent denies the allegations stating there exists legitimate non-discriminatory reasons for the Charging Party's allegations. Respondent avers that Charging Party's claim relating to tuition reimbursement is untimely, but then argues that Charging Party's tuition for undergraduate course work was reimbursed because it was related directly to her position. However, because her degree was unrelated to her current job, her graduate course work request was denied. It is Respondent's position that Mr. Nogar played no part in the decision to deny tuition reimbursement. Respondent also avers that Charging Party was not qualified and was therefore not interviewed for the Director of Service Standards and Operations position.

The record indicates that the decision to deny reimbursement for tuition was denied by Barbara Hancock, Director of Employee Development, and Mr. Nogar played no part in the decision. This is however contradicted by credible witness information which indicates that Mr. Nogar did in fact have input into the decision as the matter was discussed between Ms. Hancock and Mr. Nogar.

The record supports Charging Party's allegations of retaliation, as set forth in her complaint. Additionally the record indicates that Respondent prevented Charging Party from attending meetings and subjected her to attempts at redefining her position in a manner which would subordinate her in the office hierarchy. The evidence indicates that Charging Party participated in an activity protected under Title VII.

The record also indicates that as alleged, Respondent precluded Charging Party from consideration for the position of Director of Service Standards. Credible witness statements revealed that David Nogar prepared the posting for the vacant position and submitted it to Human Resources. The evidence also indicates that Mr. Nogar was the decision maker in the selection of the successful candidate. The record indicates that prior to the hiring of Ms. Sloane, the position of Director of Service Standards did not exist. The function was performed by Mr. Nogar who relied upon the expertise of the Charging Party to provide her knowledge of operations.

The record indicates that the major responsibility of the position of the Director of Service Standards position is to be the primary contact for legal for rules and standards and cannot be performed without an understanding of train operations. In fact, the knowledge of graphics is actually a minor requirement of the position. In fact, Charging Party is still listed as the primary contact with regard to compliance and operations issues. Notwithstanding this fact, the record indicates that subsequent to being hired, the successful candidate received graphics training which allowed her to perform the functions of her position.

A credible witness interview corroborated Charging Party's allegation that beginning in June 2005, Monika Sloane acted to prevent Charging Party from attending meetings and also restricted her work at home, while allowing a White comparator to work from home. This was done at the direction of David Nogar. Ms. Sloane subsequently denied Charging Party early departure in August 2005 and compensatory time accrual in October 2005.

Based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of Title VII of the Civil Rights Act of 1964, as amended. The record indicates that Respondent failed to select Charging Party for the position of Director of Service Standards and Operations because of her race (Black). The evidence clearly shows that her race and retaliation were factors considered by the Respondent when it failed to select Charging Party for the position.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. In this regard, conciliation of this matter has now begun. Please be advised that any reasonable offer to resolve this matter will be considered. The Commission can seek an amount inclusive of full back pay (wage losses) with interest, plus compensatory damages, benefits, and actual monetary costs incurred by the Charging Party. A Commission representative will prepare a demand for monetary relief; interest and other appropriate terms of relief. Again, the Commission is postured to consider any reasonable offer during this period. If an offer has not previously been submitted, Respondent is requested to accept, reject, or submit a counteroffer to the conciliation proposal which will be forthcoming on behalf of the Charging Party.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Commission is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On Behalf of the Commission:

3/2/07
Date

Marie M. Tomasso
District Director