UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PAMELA MONTGOMERY BECKHAM, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-172 (RMC) |
| NATIONAL RAILROAD PASSENGER CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff Pamela Montgomery Beckham sues Defendant National Railroad Passenger Corporation for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.* Before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. *See* Dkt. # 5. For the reasons set forth herein, the Court will deny the motion.

**I. FACTS**

Plaintiff is an African-American woman who has been employed by Defendant National Railroad Passenger Corporation (Amtrak) since 1989. Plaintiff was initially hired as a Train Attendant. She is currently a Senior Analyst in the Office of Service Standards located in Wilmington, Delaware.

In 1999, Plaintiff was part of a class action filed against Defendant alleging race discrimination against African-American employees. Compl. ¶¶ 1 & 7. The class action was

resolved through a consent decree which continued until 2004. *Id.* ¶ 7. Mr. David Nogar, Senior Director of the Service Standards Division, was named in the class action as an Amtrak official who engaged in race discrimination against African-American employees. *Id.*

As a Senior Analyst in the Service Standards Division, Plaintiff worked directly for Mr. Nogar. *Id.* ¶ 8. Mr. Nogar allegedly instructed the Employee Development Division not to approve tuition reimbursement for classes that Plaintiff attended to improve her performance. *Id.* ¶ 10. Other comparators who are white and/or who were not part of the class action allegedly have been reimbursed for their tuition expenses. *Id.* ¶ 11.

In 2005, Defendant posted a vacancy position to select Mr. Nogar's replacement as Director of Service Standards. *Id.* ¶ 12. The job description, drafted by Mr. Nogar, did not accurately reflect the duties of the job but is alleged to have included qualifications purposefully intended to eliminate Plaintiff from eligibility. *Id.* Defendant's Office of Human Resources reviewed and approved the description. *Id.* ¶ 13. Mr. Nogar selected a white applicant to fill the position, despite his alleged knowledge that Plaintiff was a better qualified candidate. *Id.* ¶ 14. The person selected had not engaged in protected activity. *Id.*

Defendant allegedly has denied Plaintiff other benefits and favorable conditions of employment, including training and preferential work conditions, that were not denied to white employees and/or employees who have not engaged in protected activities. *Id.* ¶ 15.

In January 2006, Plaintiff filed a formal charge of discrimination with United States Equal Employment Opportunity Commission ("EEOC") alleging disparate treatment and denial of promotion based on race and/or retaliation for her previous involvement in protected activities. *Id.* ¶ 16. The EEOC investigated the charge and determined that reasonable cause exists to believe that

Defendant violated Title VII based on race discrimination and retaliation. *Id.* ¶ 17. The EEOC attempted to resolve the dispute through mediation but Defendant refused to participate. *Id.* ¶ 18. On October 29, 2007, the EEOC issued a Notice of Right to Sue to Plaintiff. *Id.* ¶ 19. On January 29, 2008, Plaintiff filed this lawsuit alleging discrimination on the basis of race in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2, and retaliation for opposing unlawful discrimination in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-3. *See* Dkt. # 1.

## II. LEGAL STANDARDS

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A sufficient complaint "contains a short and plain statement of the claim showing that the pleader is entitled to relief" enough "to give a defendant fair notice of the claims against him." *Ciralsky v. CIA*, 355 F.3d 661, 668-70 (D.C. Cir. 2004) (citing Fed. R. Civ. P. 8(a)). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). The facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, and a court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008).

For both a Rule 12(b)(1) and a Rule 12(b)(6) motion, the Court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *see also Aktieselskabet*, 525 F.3d at 17 (under Rule 12(b)(6), a court must construe a complaint liberally in the plaintiff's favor, accepting all of the factual allegations in the complaint as true, "even if doubtful in fact.") (citing *Twombly*, 127 S. Ct. at 1965).

In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). In deciding a 12(b)(1) motion for lack of subject matter jurisdiction, however, the Court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### III.  ANALYSIS

A.      **Exhaustion of Administrative Remedies**

Defendant argues that the Court lacks jurisdiction over Plaintiff's Title VII claims because Plaintiff failed to file a timely charge with the EEOC.[1] Plaintiff concedes that her formal "Charge of Discrimination" (EEOC Form 5) was not timely filed, but argues that she timely filed a "Charge Questionnaire" (EEOC Form 283).[2] The parties disagree about whether the Charge Questionnaire constitutes a "charge" within the meaning of Title VII.

   1.      *The Sufficiency of the Charge Questionnaire*

The Supreme Court recently considered whether an "Intake Questionnaire" constitutes a "charge" for purposes of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. *See Fed. Express Corp. v. Holowecki*, 128 S. Ct. 1147 (2008). The Intake Questionnaire (EEOC Form 283) at issue in *Holowecki* was the predecessor to the Charge Questionnaire (EEOC Form 283) at issue in this case. *See id.* at 1165 n.4 (Thomas, J., dissenting). *Holowecki* considered whether the Intake Questionnaire constituted a "charge" for purposes of the ADEA only; the Supreme Court specifically warned against importing its holding into other statutory contexts, "even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case." *Id.* at 1153. Notwithstanding this admonition, because of the similarities between the

---

[1] "The statutory scheme of Title VII requires a plaintiff to exhaust his or her administrative remedies before a civil action may be filed in federal court." *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 12 (D.D.C. 2008). "To do so, an aggrieved party must file a charge with the EEOC alleging that the employer has engaged in an unlawful employment practice." *Id.*

[2] Because Delaware is a "deferral state," Plaintiff had 300 days from the time of the alleged discriminatory and retaliatory acts to file a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1); *Riley v. Del. River & Bay Auth.*, 457 F. Supp. 2d 505, 510 (D. Del. 2006).

statutory schemes of the ADEA and Title VII concerning exhaustion of administrative remedies,[3] the Court joins the other district courts that have applied *Holowecki* in the Title VII context.[4]

*Holowecki* held that "if a filing is to be deemed a charge[,] it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 1158. "[T]he filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes . . . ." *Id.* The Court hinted that a completed Intake Questionnaire, without more, would not meet this standard. *See id.* at 1159. Indeed, the Court found the *Holowecki* Intake Questionnaire to constitute a "charge" only because the completed questionnaire was supplemented by a detailed six-page affidavit that specifically asked the agency to "force" the employer to end its age discrimination. *Id.* at 1159-60. The Court held that this was "properly construed as a request for the agency to act." *Id.* at 1160.

While Plaintiff did not herself expressly request the EEOC to act, there are material differences between the Intake Questionnaire in *Holowecki* and the Charge Questionnaire in this case that support Plaintiff's argument that her completed Charge Questionnaire constituted the filing of a "charge." Most importantly, the Charge Questionnaire states that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination under the relevant statute(s)." Pl.'s Opp'n

---

[3] *Compare* 29 U.S.C. § 626 *with* 42 U.S.C. § 2000e-5.

[4] *See Grice v. Balt. County*, Civil No. 07-1701, 2008 WL 4849322, at *4 n.3 (D. Md. Nov. 5, 2008) & cases cited therein.

to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), Ex. 2 (Plaintiff's completed Charge Questionnaire ("Pl.'s Charge Questionnaire") n.3); *see also Holowecki*, 128 S. Ct. at 1165 n.4 (Thomas, J., dissenting) (noting this difference between the Intake Questionnaire and the Charge Questionnaire). Furthermore, the stated purposes of the forms are materially different.  Whereas the Intake Questionnaire's stated purpose "is to facilitate 'pre-charge filing counseling' and to enable the agency to determine whether it has jurisdiction over 'potential charges'[,]" *Holowecki*, 128 S. Ct. at 1159, the Charge Questionnaire's stated purpose "is to solicit information in an acceptable form consistent with statutory requirements *to enable the Commission to act* on matters within its jurisdiction."  Pl.'s Charge Questionnaire n.3 (emphasis added).

Under the *Holowecki* analysis the Court finds these material differences to be legally significant.  Unlike a completed Intake Questionnaire which requires the EEOC to "infer from the allegations themselves that action is requested and required," *Holowecki*, 128 S. Ct. at 1159, a completed Charge Questionnaire is intended to enable the agency "to act" without more.  *See* Pl.'s Charge Questionnaire n.3.  Moreover, where no timely charge is subsequently filed, a completed Charge Questionnaire will — and in this case did — activate the agency's machinery and remedial processes irrespective of whether agency action had been directly requested.  *See id.*; Pl.'s Opp'n, Ex. 4 (EEOC Determination Letter) (noting that "[t]he timeliness and all other jurisdictional requirements for coverage have been met").  Given the Supreme Court's instruction that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies[,]" *Holowecki*, 128 S. Ct. at 1160, this Court holds that Plaintiff's completed Charge Questionnaire was

sufficient to constitute a "charge."[5]  *See Taylor v. Océ Imagistics, Inc.*, Civil No. 07-792, 2008 WL 2148557, at *3 (E.D. Va. May 21, 2008) (treating as a charge an "Employment Discrimination Complaint Questionnaire" which stated that "if it is 'the only timely written statement of alleged discrimination, the [EEOC] will . . . consider it to be a sufficient charge of discrimination'") (alterations in original).

### 2. *Failure to Promote*

The parties agree that Plaintiff's failure-to-promote claim accrued on January 16, 2005, the date Defendant hired another applicant for the position of Director of Service Standards & Operations.  *See Williams v. Giant Food Inc.*, 370 F.3d 423, 428 n.2 (4th Cir. 2004) (cause of action for failure-to-promote under Title VII accrues when employer fills the position).  Plaintiff filed her Charge Questionnaire on November 10, 2005, 299 days later.  *See* Pl.'s Charge Questionnaire.  For cases arising in Delaware, a charge must be filed with the EEOC within 300 days of the alleged violation.  *See supra* note 2.  Accordingly, Plaintiff's failure-to-promote claim was timely filed with the EEOC.

### 3. *Failure to Reimburse/Denial of Training*

There is a factual dispute as to when Plaintiff's failure-to-reimburse/denial-of-training claim accrued.  Plaintiff alleges that it accrued in March 2005.  *See* Pl.'s Opp'n, Ex. 1 (Decl. of Pamela Beckham) ¶¶ 9, 11.  Defendant asserts that it accrued in July 2004.  *See* Def.'s Reply at 4.  However, for purposes of Defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Federal

---

[5] The Court is not persuaded by Defendant's argument that the questionnaire fails to constitute a charge because Plaintiff left blank the section instructing her to explain why she believes she was discriminated against on the basis of her race.  Plaintiff provided an explanation in her lengthy answer to the previous question, which continued onto an attached page.  *See* Pl.'s Charge Questionnaire.

Rules of Civil Procedure, the Court must accept Plaintiff's factual allegations as true. *See*, *e.g.*, *Nat'l Hospice & Palliative Care Org., Inc. v. Weems*, Civil No. 08-1543, 2008 WL 4966502, at *6 (D.D.C. Nov. 24, 2008). Because Plaintiff filed her Charge Questionnaire within 300 days of the date that Plaintiff asserts her failure-to-reimburse/denial-of-training claim accrued, it was timely filed with the EEOC.

**B.    Failure to State a Claim**

Plaintiff alleges in relevant part that "Defendant has denied Plaintiff Beckham other benefits and favorable conditions of employment, including training and preferential work conditions, that were not denied to Caucasion co-workers and/or other co-workers who have not engaged in protected activities against Defendant Amtrak." Compl. ¶ 15.[6] Defendant argues that Plaintiff's discrimination and retaliation claims for denial of benefits fail because they do not allege any adverse employment action. Defendant further argues that Plaintiff's retaliation claim for denial of benefits also fails for lack of causal connection. The Court disagrees.

1.    *Adverse Employment Action*

a.    Discrimination

"An employment action does not support a claim of discrimination unless it has 'materially adverse consequences affecting the terms, conditions, or privileges of [the plaintiff's] employment . . . such that a reasonable trier of fact could find objectively tangible harm.'" *Ginger v. Dist. of Columbia*, 527 F.3d 1340, 1343 (D.C. Cir. 2008) (*quoting Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)) (alterations in original). While it is true that Plaintiff does not

---

[6] In her opposition to the motion to dismiss, Plaintiff asserts that she has redrafted Paragraph 15 in an Amended Complaint. *See* Pl.'s Opp'n at 9. However, the docket does not reflect that Plaintiff filed an Amended Complaint.

specifically allege that these actions had materially adverse consequences on her terms and conditions of employment, for purposes of Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must infer that the denial of benefits did have a material adverse consequence on her terms and conditions of employment. *See*, *e.g.*, *Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 191 (D.D.C. 2008) ("In resolving a Rule12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true *and draw all reasonable inferences therefrom in the plaintiff's favor*.") (emphasis added). A denial of training may be actionable discrimination under Title VII. *See Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 845 (D.C. Cir. 2001) (noting that "a denial of training may rise to the level of an adverse employment action"); *Santa Cruz v. Snow*, 402 F. Supp. 2d 113, 127 (D.D.C. 2005) (noting same "but only if the denial materially affects the plaintiff's pay, hours, job title, responsibilities, promotional opportunities, and the like"). Given the procedural posture of this case, the Court infers that implicit in Plaintiff's allegation is that the denial of training and other benefits materially affected her terms and conditions of employment. Accordingly, Plaintiff has stated an actionable discrimination claim for denial of benefits.

                b.      <u>Retaliation</u>

"Title VII's substantive provision and its anti-retaliation provision are not coterminous." *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "The scope of the anti-retaliation provision extends beyond workplace-related or employment related retaliatory acts and harms." *Id.* Thus, "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64. Accordingly, Defendant's argument that Plaintiff's retaliation claim fails because she does not

"allege a significant change in her employment status"[7] is contrary to the law. *See Steele v. Schafer*, 535 F.3d 689, 695-96 (D.C. Cir. 2008) (noting that the Supreme Court rejected the standard requiring a retaliation plaintiff to show a materially adverse change in employment terms). All that Plaintiff needs to show to state a retaliation claim is that "a reasonable employee would have found the challenged action materially adverse," *Burlington*, 548 U.S. at 68, which in this context means that the denial of benefits might have dissuaded a reasonable employee from opposing discrimination prohibited by Title VII. *See id.*; Compl. Count II (alleging retaliation for opposing actions made unlawful by Title VII). For the same reasons discussed above, the Court infers that implicit in Plaintiff's retaliation claim for denial of benefits is that a reasonable employee would have found the denial of benefits to be materially adverse.

      2.    *Causation*

Defendant also argues that Plaintiff's retaliation claim for denial of benefits fails because there is no temporal causal connection between Plaintiff's protected activity and the denial of benefits.[8] Defendant argues that the temporal gap between Plaintiff's protected activity and the denial of benefits is too great to establish a presumption of causation between the two. *See* Def.'s Mem. at 9-10; Def.'s Reply at 6-7.

However, a close temporal connection is not the only way to prove causation. "A plaintiff may also put forward direct evidence and disregard the presumption and its time limitations." *Vance v. Chao*, 496 F. Supp. 2d 182, 186 (D.D.C. 2007) & cases cited therein. Indeed,

---

    [7] Def.'s Mem. at 10.

    [8] Defendant does not argue that Plaintiff's other retaliation claims fail to state a claim. *See* Def.'s Reply at 6 n.3.

"temporal proximity is not a required element of retaliation; rather, it may be used as evidence of retaliatory intent." *Beard v. Preston*, 576 F. Supp. 2d 93, 105 (D.D.C. 2008). "While the lack of temporal proximity between Plaintiff's protected activity and an adverse employment action may be used by Defendant as evidence that causation does not exist, it does not mandate the grant of summary judgment." *Id.* at 105-06. "At this early stage of the proceedings, plaintiff can meet her *prima facie* burden simply by alleging that the adverse actions were caused by her protected activity." *Vance*, 496 F. Supp. 2d at 187. Plaintiff has satisfied her burden by alleging that she was denied benefits "*because* of her opposition to actions made unlawful by Title VII . . . ." Compl. Count II (emphasis added); *see id.* (plaintiff stated a claim by alleging that adverse actions were taken against her because of her protected activity).

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss [Dkt. # 5]. A memorializing Order accompanies this Memorandum Opinion.


DATE: December 10, 2008                              /s/
                                                     ROSEMARY M. COLLYER
                                                     United States District Judge